No. 3458

Second Circuit

GAY v. SABINE STATE BANK & TRUST COMPANY

No. 3459

Second Circuit

PILCHER v. SABINE STATE BANK & ·TRUST COMPANY

(March 24, 1930. Opinion and Decree.)

R. A. Fraser, of Many, attorney for plaintiffs, appellees.

Ponder & Ponder, of Many, attorneys for defendant, appellant.

Craig, Bolin & Magee, of Mansfield, attorneys for defendants called in warranty, appellees.

ODOM, J. In the early part of 1926, the state bank examiner, under the direction of the state banking department, investigated the affairs of the Bank of Zwolle and found it insolvent, or, as Mr. Buckner, the examiner, expressed it, "in a hazardous condition." He found and reported to the directors and stockholders that the affairs of the bank would have to be liquidated; and, further, that it was probable that the depositors would lose heavily in the end. This was made known to the depositors by Mr. Buckner and the officers of the bank.

A proposition was made to the Sabine State Bank & Trust Company, of Many, defendant herein, that it take over the assets of the Zwolle bank, assume its liabilities, and operate it as a going concern. This the defendant bank refused to do unless certain concessions were agreed to by both the stockholders and the depositors, as it was evident that the liabilities of the Zwolle bank exceeded its assets. The stockholders were willing to surrender whatever interest they had, and one of them, Mr. Towery, agreed to waive his deposit account, amounting to $10,000. But this waiver did not sufficiently reduce the liabilities of the failing bank, and it demanded that in addition the other depositors agree to a reduction of their deposit accounts to the extent of some 50 per cent. A great many, but not all, of the depositors voluntarily agreed to a reduction of the amounts due them, and authorized the bank examiner to charge their accounts on the books with such amounts as they were willing to surrender, and the bank examiner did so. The liabilities of the failing bank were thereby so reduced that

the defendant bank agreed to take over its entire assets and assume its liabilities.

But, before the deal was consummated, the bank examiner called to the attention of Mr. Knott, president of the defendant bank, who represented it all through, and Mr. Towery, who represented the failing bank, that there were two deposit accounts shown on the ledger which had not been reduced. These were the accounts of L. B. Gay, tutor, in the amount of $1,380, and J. R. Pilcher, tutor, in the amount of $4,-776.53. The bank examiner therefore advised Mr. Knott and Mr. Towery that, as these funds were on deposit to the credit of Mr. Gay and Mr. Pilcher in their fiduciary capacities, no reduction thereof could be made without an order of court, and that no such order had been obtained and presented to him. It was learned that Mr. Fraser was attorney for both parties, and the bank examiner, Mr. Knott, and Mr. Towery arranged a consultation with him looking to the proposition of having some reduction made in these accounts along with the others. Mr. Fraser was of the opinion that it would be to the interest of all the depositors—these tutors as well as the others—to make the reductions demanded in order to make the proposition attractive to the defendant, in taking over the affairs of the failing bank, and he agreed to make application to the court for an order authorizing the tutors to make the concessions. Upon Mr. Fraser's agreeing to do that, the bank examiner consented to make the reductions on the books, provided that Mr. Knott, who represented the defendant bank, was willing that that should be done. Mr. Knott and Mr. Towery, after consultation with Mr. Fraser, the attorney, told the bank examiner that they thought that, with Mr. Fraser's recommendation, the court would

order the reductions made, and that they were satisfied to proceed.

Accordingly, the bank examiner wrote out two slips which were filed in the records of the bank as vouchers. These slips are as follows:

"Debit                    L. B. Gay, Tutor,
    "20% Deposit donated as a bonus to assist in the sale of the Bank of Zwolle as per instructions his attorney, R. A. Frazer, $276.60."

"Debit        J. R. Pilcher, Admx. (Tutor)
    "20% Deposit donated as a bonus to assist in the sale of the Bank of Zwolle as per instructions his attorney, R. A. Frazer, $955.00."

The bank examiner then proceeded to charge each of the accounts with the amounts specified. This was done on March 9th, and, after the close of banking hours on that day, the deal between the stockholders of the Zwolle bank and the defendant bank was consummated, by which the stockholders of the Zwolle bank sold and delivered to defendant all of the assets of every character and description belonging to the Zwolle bank, this sale being made by virtue of a resolution adopted under the provisions of section 3, Act 193 of 1910.

On the following day, the defendant bank opened the doors of the Zwolle bank and began to operate it as a going concern.

Subsequently, the defendant bank admitted its liability to these tutors to the extent of the total credit as shown by the books, less the 20 per cent reduction as made by the bank examiner. The present suits are against the defendant bank for the total amount of the deposits, but, inasmuch as the defendant admitted its liability for these amounts, less the 20 per cent reduction, only the latter amounts are involved in this suit.

It is perfectly clear that the reductions made by the bank examiner were illegal and not binding upon the minors. The funds belonged to the minors and were held by the tutors in their fiduciary capacities. The tutors themselves did not give assent to these reductions, and, even if they had, it would not have been binding, because a tutor cannot transact or compromise for his wards without being authorized by the judge. Civil Code, art. 3072. It is conceded that the defendant bank, in taking over the assets of the Zwolle bank as it did, became liable to the depositors for the full amounts shown on the books, less such reductions as were legally made. It follows, therefore, that defendant is liable to these tutors for the full amount of these deposit accounts as they stood on the books prior to the transfer. There was no order of court authorizing these reductions before the transfer, nor has there been any since. The record shows that Mr. Fraser, representing the tutors, applied to the court for such order, which was refused by the judge, and that he ordered a family meeting to deliberate and advise as to whether the reductions should be made, and the family meeting declined to so recommend.

But there is another angle to the case out of which has arisen the serious controversy before the court. In the act of transfer by the stockholders of the Zwolle bank to the defendant bank, there is this stipulation: "It being also understood that the signers hereof (being the stockholders of the Zwolle bank) obligate and bind themselves personally to pay to the Sabine bank, or its successor, all valid debts or claims due by the Bank of Zwolle to any creditor *not shown on the books*, if presented for payment within three years from the date hereof."

When the present suits were filed against the defendant bank, it called J. P. Towery, W. H. Pearson, S. H. Porter, A. C. Haley, R. L. Gay, and, T. Laroux, who signed the act of transfer, in warranty; the bank's contention being that they were liable to it for this 20 per cent reduction in these deposit accounts, on the theory that, when the transfer was made, these accounts had been reduced, and that therefore the 20 per cent now in controversy was not shown on the books of the bank. The defense of the warrantors is that these amounts did show on the books of the bank, and that they are not bound for that reason.

The district judge found and held that the defense of the warrantors was well founded, and we fully concur in that view.

The defendant bank accepted the transfer with full knowledge of the total amount due these minors and with knowledge that the reductions which had been made by the bank examiner were unwarranted and unauthorized, and, after being advised that no reduction could be made without an order of the court, the defendant bank claims that it was misled by Mr. Fraser, the attorney. It claims that Mr. Fraser guaranteed that the reduction would be made by order of the court, but we find to the contrary. Mr. Buckner, the bank examiner, and Mr. Knott, president of the defendant bank, both testified that they understood that Mr. Fraser guaranteed the reduction, but on cross-examination they admitted that they might be mistaken. Mr. Fraser testified positively that all he said was that he would make application to the court for such order and would do what he could to get it, and his letter to the parties clearly states that that was all he could do. Bu, even if Fraser did make such guaranty, the defendant knew that the attorney had no authority to bind the minors in that respect. The bank accepted the transfer with full knowledge of all the facts and with knowledge of the law applicable to such cases. It therefore took chances on getting the reduction. Furthermore, it is not clear that the bank would not have accepted the transfer, even though it knew the reductions would not be made. Mr. Knott was asked if he would have refused to consummate the deal, without these transfers and he said, "I would not say that."

The liability to these tutors was shown on the books of the bank when the transfer was made. That liability was for the full amount on deposit, and not that amount, less the illegal reduction made. These warrantors are liable to the defendant bank for only such debts of the Zwolle bank as are not shown on the books of the failing bank.

For the reasons assigned, the judgment appealed from is affirmed, with costs in both courts.